STATE OF OHIO, COLUMBIANA COUNTY
IN THE COURT OF APPEALS
SEVENTH DISTRICT

| | | |
|---|---|---|
| OHIO BUREAU OF | ) | CASE NO. 12 CO 41 |
| WORKERS' COMPENSATION | ) | |
| | ) | |
| PLAINTIFF-APPELLANT | ) | |
| | ) | |
| VS. | ) | OPINION |
| | ) | |
| JEFFREY McKINLEY | ) | |
| | ) | |
| AND | ) | |
| | ) | |
| HERITAGE-WTI, INC., et al. | ) | |
| | ) | |
| DEFENDANTS-APPELLEES | ) | |

CHARACTER OF PROCEEDINGS: Civil Appeal from the Court of Common
Pleas of Columbiana County, Ohio
Case No. 08 CV 1143

JUDGMENT: Affirmed.

APPEARANCES:
Special Counsel for Plaintiff-Appellant: Atty. Lisa R. Miller
Atty. Lee M. Smith
Lee M. Smith & Associates
929 Harrison Ave., Suite 300
Columbus, Ohio 43215

For Defendant-Appellee Jeffrey McKinley: Atty. T. Jeffrey Beausay
The Donahey Law Firm
495 S. High St., Suite 100
Columbus, Ohio 43215

For Defendant-Appellee Heritage WTI, Inc.: Atty. Patrick Kasson
Atty. Gregory Brunton
Atty. Melvin Davis, Esq.
Reminger Co. LPA
65 E. State St., 4th Floor
Columbus, Ohio 43215

JUDGES:
Hon. Cheryl L. Waite
Hon. Gene Donofrio
Hon. Joseph J. Vukovich

Dated: March 31, 2014

WAITE, J.

**{¶1}** This case arises from a lawsuit filed by Appellant Ohio Bureau of Workers' Compensation ("BWC") to recover a statutory BWC subrogation lien from Jeffrey McKinley ("McKinley") and Appellee Heritage-Waste Technology Industries ("Heritage-WTI") in East Liverpool. The incident giving rise to this appeal occurred in 2003, when McKinley was injured on the premises of former Von Roll America, Inc. (now Heritage-WTI). Although the injury occurred at Heritage-WTI, McKinley was actually employed by Safway Services, Inc. ("Safway") at the time. McKinley applied for and received benefits from BWC, while at the same time filing lawsuits against Safway and Heritage-WTI. McKinley dismissed Safway from the suit and eventually entered into a settlement and release with Heritage-WTI.

**{¶2}** BWC then filed a lawsuit asserting that the settlement violated BWC's subrogation rights under R.C. 4123.931(G), and that it was not notified of the settlement talks. The case was dismissed on statute of limitations grounds, but was reinstated on appeal. *Ohio Bur. of Workers' Comp. v. McKinley*, 130 Ohio St.3d 156, 2011-Ohio-4432, 956 N.E.2d 814 (hereinafter, "*McKinley II*"). On remand, the trial court found that BWC had been given proper notice of the settlement talks and that the settlement did not exclude payments made by BWC. Pursuant to R.C. 4123.931(G), if either of these two requirements are not met, BWC can enforce its subrogation rights against a third party regardless of the terms of the settlement. Because BWC could not show that Heritage-WTI's settlement violated either of the two requirements of R.C. 4123.931(G), the court granted summary judgment to Heritage-WTI. This timely appeal followed.

**{¶3}** On appeal, BWC argues that the trial court erred in granting Heritage-WTI's motion for summary judgment because (1) Heritage-WTI's evidence in support of summary judgment did not comply with Civ.R. 56(C); (2) failure to mention BWC's rights in the settlement release is the functional equivalent of excluding those rights according to the statute; and (3) the trial court erred in relying on Justice Pfeifer's concurring opinion in *McKinley II*.

**{¶4}** BWC's first argument is contradicted by the record, which reflects that the evidence was properly attached to Heritage-WTI's reply to BWC's response to the motion for summary judgment.

**{¶5}** BWC's second argument misinterprets R.C. 4123.931(G) by reading into it an affirmative requirement that the parties must include a discussion of BWC's lien in the settlement agreement. The statute only imposes liability on the claimant and third party "if a settlement or compromise excludes any amount paid by the statutory subrogee," and there is no such exclusion in the settlement. The statute presumes that BWC has certain rights to collect on its lien from any settlement and provides the mechanism so that BWC can collect a portion of any settlement. In addition, the settlement was well in excess of the BWC lien. We do not interpret the settlement to exclude the amounts paid by BWC. Therefore, there is no merit to this argument.

**{¶6}** Third, BWC takes issue with the trial court's reliance on Justice Pfeifer's concurring opinion in *McKinley II* regarding the manner in which BWC should proceed on its R.C. 4123.931(G) claim. A trial court may rely on persuasive authority

from any source, including an Ohio Supreme Court's concurring opinion, particularly when the persuasive authority is directly on point. Hence, the third assignment of error is also without merit. As Appellant's assignments of error are not persuasive, the judgment of the trial court is affirmed.

## Background

{¶7} On July 13, 2003, McKinley was injured while working at the former Von Roll America, Inc. waste incinerator site (now called Heritage-WTI) in East Liverpool, Ohio. McKinley was building scaffolding inside of an incinerator when he fell and suffered severe burns. He was employed by Safway at the time. Because of the injuries he sustained, he filed a claim for compensation benefits with BWC. His claim was allowed and BWC paid medical bills and compensation on his behalf. Additionally, McKinley also filed an intentional tort suit against his employer, Safway, which was later dropped, and a premises liability lawsuit against Heritage-WTI for personal injury. The suit was filed on August 20, 2003 in the Franklin County Court of Common Pleas.

{¶8} On October 25, 2004, McKinley's counsel informed BWC that McKinley had entered into settlement negotiations with Heritage-WTI. On November 1, 2004, McKinley gave notice to the Ohio Attorney General that counsel was trying to reach a settlement with Heritage-WTI. On the same day, McKinley's counsel informed BWC that he believed that a settlement could be reached and asked BWC to accept a reduced amount for its lien. On November 3, 2004, BWC advised McKinley that it was willing to compromise its subrogated interest for $338,856.08 as a full and final

settlement. BWC requested a conference before the Administrator's Designee to resolve the issue regarding allocation of recovery pursuant to R.C. 4123.931(B). McKinley accepted this proposal and a conference was scheduled.

{¶9} On December 10, 2004, McKinley signed a release and settlement agreement with Heritage-WTI. The document does not mention the BWC lien. The release was in exchange for payment of $1,100,000 from Heritage-WTI, to be paid in monthly installments over 30 years. Heritage-WTI did not sign the document.

{¶10} The parties for BWC, Heritage-WTI and McKinley all attended a conference with the Administrator's Designee on January 10, 2005. All parties had a chance to submit their estimates for the valuation of benefits already paid as well as future benefits to be paid by BWC. The Administrator's Designee decided that the amount of $338,856.08 asked by BWC was reasonable and should be remitted to BWC.

{¶11} The next day, January 11, 2005, McKinley filed a notice of dismissal of the case pending in the Franklin County Court of Common Pleas against Heritage-WTI. BWC had not intervened as a party in the case. After dismissal, instead of remitting funds to BWC to repay the lien, McKinley subsequently filed a declaratory judgment action in Washington County challenging the constitutionality of the subrogation statutes and the amount of the BWC subrogation lien. BWC's collection efforts were stayed. The trial court held the statute unconstitutional, but on appeal to the Fourth District Court of Appeals, the judgment was reversed and the statute was held to be facially constitutional. *McKinley v. Ohio Bur. of Workers' Comp.*, 170 Ohio

App.3d 161, 2006-Ohio-5271, 866 N.E.2d 527. McKinley appealed that decision to the Ohio Supreme Court, which summarily affirmed the judgment of the court of appeals on authority of *Groch v. Gen. Motors Corp.*, 117 Ohio St.3d 192, 2008-Ohio-546, 883 N.E.2d 377. *McKinley v. Ohio Bur. of Workers' Comp.,* 117 Ohio St.3d 538, 2008-Ohio-1736, 885 N.E.2d 242 (hereinafter, "*McKinley I*"). Upon remand to the trial court, McKinley voluntarily dismissed his complaint under Civ.R. 41(A).

{¶12} On November 4, 2008, BWC filed suit in the Columbiana County Court of Common Pleas against Heritage-WTI and McKinley to hold them jointly and severally liable for the full amount of the lien for failure to include BWC in the settlement process, pursuant to R.C. 4123.931(G). The Columbiana County Court of Common Pleas dismissed BWC's complaint on the grounds that the two-year statute of limitations for personal injury claims had run. BWC appealed, and we held that a R.C. 4123.931(G) claim was a statutory right with a 6-year statute of limitations, and the case was remanded to the trial court. Our decision was upheld by the Ohio Supreme Court. *McKinley II, supra,* 130 Ohio St.3d 156, 2011-Ohio-4432, 956 N.E.2d 814. The Supreme Court remanded the matter to the trial court to be decided on the merits.

{¶13} In a concurring opinion in *McKinley II*, Justice Pfeifer noted that it was never contested that BWC had notice of the settlement negotiations and therefore, according to R.C. 4123.931(G), BWC could prevail against Heritage-WTI only if the settlement agreement between Heritage-WTI and McKinley had specifically excluded payments made by BWC.

{¶14} On August 30, 2012, the Columbiana County Court of Common Pleas granted Heritage-WTI's motion for summary judgment, finding that BWC had notice of the settlement talks and that there was no evidence that the payments made by BWC to McKinley were excluded from settlement. BWC appealed this decision. On November 9, 2012, the court issued a corrected judgment entry that conformed with Civ.R. 54(B) allowing the judgment to be reviewed as a final appealable order.

Standard of Review

{¶15} An appellate court conducts a *de novo* review of a trial court's decision to grant summary judgment, using the same standards as the trial court set forth in Civ.R. 56(C). *Grafton v. Ohio Edison Co.,* 77 Ohio St.3d 102, 105, 671 N.E. 241 (1996). Before summary judgment can be granted, the trial court must determine that: (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most favorably in favor of the party against whom the motion for summary judgment is made, the conclusion is adverse to that party. *Temple v. Wean United, Inc.,* 50 Ohio St.2d 317, 327, 364, N.E.2d 267 (1977). When a court considers a motion for summary judgment, the facts must be taken in the light most favorable to the nonmoving party. *Id.*

{¶16} "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the

nonmoving party's claim." (Emphasis deleted.) *Dresher v. Burt*, 75 Ohio St.3d 280, 296, 662 N.E. 2d 264 (1996). If the moving party carries its burden, the nonmoving party has a reciprocal burden of setting forth specific facts showing that there is a genuine issue for trial. *Id.* at 293. In other words, when presented with a properly supported motion for summary judgment, the nonmoving party must produce some evidence that suggests that a reasonable factfinder could rule in that party's favor. *Brewer v. Cleveland Bd. of Edn.,* 122 Ohio App.3d 378, 386, 701 N.E.2d 1023 (8th Dist.1997).

<u>ASSIGNMENT OF ERROR NO. 1</u>

The Common Pleas Court, Columbiana County, Ohio, erred in granting Heritage-Waste Technologies Industries' (hereinafter "Heritage-WTI"), Motion For Summary Judgment as Heritage-WTI failed to meet the burden of proof pursuant to Ohio Civ. R. 56 (C) as Heritage-WTI's attached documents to its motion are insufficient to support the summary judgment motion.

**{¶17}** This appeal involves the interpretation of part of the BWC subrogation statute that sets forth BWC's rights regarding settlements between claimants and third parties. The statutory subsection is R.C. 4123.931(G), which states:

A claimant shall notify a statutory subrogee and the attorney general of the identity of all third parties against whom the claimant has or may have a right of recovery, except that when the statutory subrogee is a self-insuring employer, the claimant need not notify the attorney general.

*No settlement, compromise, judgment, award, or other recovery in any action or claim by a claimant shall be final unless the claimant provides the statutory subrogee and, when required, the attorney general, with prior notice and a reasonable opportunity to assert its subrogation rights. If a statutory subrogee and, when required, the attorney general are not given that notice, or if a settlement or compromise excludes any amount paid by the statutory subrogee, the third party and the claimant shall be jointly and severally liable to pay the statutory subrogee the full amount of the subrogation interest.* (Emphasis added.)

**{¶18}** In this case, Heritage-WTI filed a motion for summary judgment arguing that it was not liable under R.C. 4123.931(G) because BWC was given notice of the settlement talks and because the settlement release does not exclude any amount paid by BWC. In support of its motion, it included various correspondence to and from BWC giving notice of and discussing the settlement and release. It also attached a copy of the release that was signed by the McKinleys. Both parties refer to this release as the agreement that was reached between Heritage-WTI and McKinley.

**{¶19}** Appellant argues that the documents submitted by Heritage-WTI fail to meet Civ.R. 56(C) standards. Therefore, it claims there was no real evidence that it had received notice of the settlement talks and reasonable opportunity to defend its subrogation rights, or that the settlement did not exclude amounts paid by BWC. The documents at issue include a letter dated October 25, 2004, which put BWC on

notice of settlement negotiations; a letter dated November 1, 2004, which put the Ohio Attorney General on notice of settlement negotiations; and the release and settlement agreement.

**{¶20}** The question of whether BWC received notice of the settlement negotiations is *res judicata*, because it was addressed and ruled on by the Ohio Supreme Court in *McKinley II*: "After McKinley provided notice to the bureau and to the Ohio attorney general in 2004 that he was in settlement negotiations with Heritage, he and Heritage settled for an undisclosed amount." *McKinley II* at ¶5. The documents in question, though, are relevant to the other elements of a R.C. 4123.931(G) claim.

**{¶21}** Appellant contends that these documents do not fall within the accepted documents listed in Civ.R. 56(C), which allows for pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact. However, materials not referenced in Civ.R. 56(C) may be properly considered if they are incorporated by reference in a properly framed affidavit. *Spagnola v. Spagnola*, 7th Dist. No. 07 MA 178, 2008-Ohio-3087, ¶37.

**{¶22}** Admittedly, Heritage-WTI did not initially incorporate the letters and the settlement agreement into an affidavit, but Heritage-WTI resubmitted the documents in its reply to BWC's response to the motion for summary judgment. The documents were attached to and referenced in the affidavit of Melvin J. Davis, legal counsel for Heritage-WTI. Thus, they were properly part of the record before the trial court and

may be considered in support of summary judgment.  We overrule Appellant's first assignment of error and find that Heritage-WTI's evidence was properly submitted.

### ASSIGNMENT OF ERROR NO. 2

The Common Pleas Court, Columbiana County, Ohio erred in concluding that because the settlement agreement between Heritage-WTI and Jeffrey McKinley, (hereinafter "McKinley"), contains no provision specifically excluding payments by the BWC, that this equates to the BWC being included in the settlement.

**{¶23}** Under this assignment of error, Appellant argues that it was not given a reasonable opportunity to assert its subrogation claim and that its claim was excluded from the settlement agreement.  Regarding whether BWC was given a reasonable opportunity to assert its subrogation rights, this argument is baseless, given that BWC was informed of the settlement talks on October 25, 2004; participated in the settlement negotiations by various letters exchanged between counsel prior to settlement being reached; asked for and received an Administrator's Designee Conference in January of 2005; and had the opportunity to intervene in McKinley's lawsuit until January 11, 2005, but did not intervene.  This record reflects that BWC was substantially involved in the settlement process and did assert its claim.

**{¶24}** Appellant also argues that the trial court misinterpreted the following portion of R.C. 41213.931(G): "if a settlement or compromise *excludes any amount paid by the statutory subrogee*, the third party and the claimant shall be jointly and severally liable to pay the statutory subrogee the full amount of the subrogation

interest." (Emphasis added.) Appellant contends that this phrase means that a settlement agreement must specifically mention and deal with the terms of reimbursement of any amounts paid by BWC. BWC further concludes that the exclusion of its rights from the settlement allows it to recover the full amount of the benefits it has paid out from either McKinley or Heritage-WTI. Appellant's argument is not persuasive.

{¶25} Pursuant to R.C. 4123.931(G), a court is not required to ensure that a dollar amount paid by the statutory subrogee is specifically included in the settlement; rather, courts are required to determine whether such a settlement specifically *excludes* the amount paid by the statutory subrogee. If this sum is clearly excluded from the settlement, then the third party is liable. The statute does not require the parties to identify the agreement, the extent of BWC's participation in the settlement, how BWC is to be paid from the settlement, the timing of the settlement payments, or any of a dozen other terms that BWC might prefer to have included in the final settlement. The statute merely directs that if the settlement clearly excludes amounts owed to BWC, BWC has other recourse to collect. But the language is written clearly in the negative and at no time are the parties required to specifically include subrogation amounts so long as it remains apparent that these amounts have not been deliberately excluded.

{¶26} In this case, the settlement was for $1,100,000.00. The amount of the BWC's subrogation lien was determined to be $338,856.08 by the Administrator's Designee. Therefore, the settlement cannot be interpreted to exclude the BWC lien.

Although the settlement does not mention BWC's lien by name, there is nothing in the settlement that can be interpreted to exclude this lien or BWC's rights to collect on the lien as permitted by the subrogation statute. The settlement is well in excess of BWC's lien, more than three times the amount of the lien in fact, so there is no argument to be made that McKinley and Heritage-WTI kept the settlement purposely low to avoid paying back this BWC lien.

{¶27} The statute is written to address an exclusion of the subrogation lien from the settlement, rather than in terms of a failure to include it, because there is a statutory presumption that BWC will be able to recover its lien from the  settlement via the proportional collection procedure set forth in R.C. 4123.931(B). This recovery formula applies "[i]f a claimant, statutory subrogee, and third party *settle or attempt to settle* a claimant's claim against a third party * * *." (Emphasis added.) R.C. 4123.931(B). If the parties try to avoid or negate that statutory presumption by carving out the amount owed to BWC from the settlement, the consequences of R.C. 4123.931(G) apply, but that does not negate the collection formula and procedure set forth in subsection (B).

{¶28} The proportional recovery formula in R.C. 4123.931(B) was created in the statutory revisions of 2002 S.B. 227, effective April 9, 2003. Prior to S.B. 227, the statute simply allowed BWC to recover its entire lien, including possible future benefits, before any settlement funds were distributed to the claimant regardless of whether the claimant's losses had been compensated, or even if the settlement was for damages that could not be covered through workers' compensation benefits. This

was a rather harsh result from the injured worker's perspective, and was eventually held to be unconstitutional for a variety of reasons. *Holeton v. Crouse Cartage Co.*, 92 Ohio St.3d 115, 748 N.E.2d 1111 (2001). When the law was revised in 2003, BWC's right to full reimbursement from a settlement was converted to a proportional formula based on the amount of BWC's lien in comparison to the claimant's total demonstrable damages from all sources, multiplied by the net amount recovered in settlement. These terms are defined in R.C. 4123.93, and the formula takes into account such things as attorney fees and costs involved in the settlement. The effect of the formula is that BWC does not have the right to be paid in full before the claimant can collect any amount in a settlement. BWC may take only a proportional amount of the settlement based on the ratio of its payments compared to the total damages in the case.

**{¶29}** Thus, pursuant to R.C. 4123.931, BWC retains the right to recover the amounts paid to a claimant, but only in the proportion set by the statute. If it were otherwise, BWC would likely be entering unconstitutional territory once again, at least as interpreted by *Holeton*. The settlement in this case does not deny the amount of the BWC lien, and the settlement is well in excess of that lien, so it is difficult to understand in what practical or material way the BWC lien can be interpreted as having been excluded from settlement. BWC participated in the settlement, had the amount of its lien determined by the Administrator's Designee Conference, and is able to exercise its rights under the statutory collection formula.

**{¶30}** Appellant cites to a common pleas court case, *Ohio Bureau of Workers' Comp. v. Scott G. Smith*, Lake C.P. No 12 CV 000250 (December 26, 2012), for the proposition that BWC can hold a third party and a claimant jointly and severally liable when the parties settle without first reimbursing BWC's subrogation interest. The reasoning in *Smith* is not persuasive or even applicable in this appeal. First, the trial court in *Smith* based its judgment on the parties' failure to give notice to BWC of the settlement proceedings, and we have already determined that BWC did receive the appropriate notice. Second, the trial judge incorrectly read into the statute a requirement that BWC be reimbursed first and in full as part of any settlement. This is not what the current version of R.C. 4123.931(G) says or implies. The statute does not require that BWC be paid first or in full prior to the claimant receiving any funds. "[W]here the language of a statute is clear and unambiguous, it is the duty of the court to enforce the statute as written, making neither additions to the statute nor subtractions therefrom." *Hubbard v. Canton City School Bd. of Edn.*, 97 Ohio St.3d 451, 2002-Ohio-6718, 780 N.E.2d 543, ¶14.

**{¶31}** The trial court judge in *Smith* stated that the "common-sense" interpretation of the word "exclude" means a failure to include, which is the same argument BWC makes in this appeal. In reviewing a statutory presumption, however, the common sense definition of "exclude" means that the amounts paid by BWC cannot be recovered from the settlement, whether through an express provision in the settlement or as a practical matter based on the terms of the settlement. There would be no meaningful effect on BWC's statutory rights if Heritage-WTI had included

a line in the settlement release that said "this settlement includes the amounts paid by BWC to the claimant, and BWC may collect on its lien as permitted by law." Such additional verbage would have merely restated what is already true under the terms of the statute.

**{¶32}** Appellant also cites to *Ohio Bureau of Workers' Comp. v. Williams*, 180 Ohio App.3d 239, 2008-Ohio-6685, 905 N.E.2d 201 (10th Dist.), for the proposition that parties who settle without first reimbursing BWC's subrogation interest should be held jointly and severally liable. *Id.* at ¶3. Appellant completely misstates the holding of *Williams*. *Williams* turned on the fact that BWC had not been given notice of the settlement as required by R.C. 4123.931(G), not on whether BWC's lien was excluded from the settlement. Further, in *Williams* the parties settled for $6,200 even though BWC had already paid out $7,751. It was immediately apparent that at least part of BWC's lien was not recoverable from the settlement. On the other hand, when the settlement amount is three times the amount of the BWC lien, as it is in this appeal, BWC cannot reasonably make the argument that recovery of its lien has been excluded from the total amount of the settlement.

**{¶33}** Since BWC was given notice of the settlement and a reasonable opportunity to present its claim, and because its lien amount was clearly not excluded from the settlement, Heritage-WTI is not liable under R.C. 4123.931(G). Appellant's second assignment of error is without merit and is overruled.

<u>ASSIGNMENT OF ERROR NO. 3</u>

The Common Pleas Court, Columbiana County, Ohio, erred by relying solely upon Heritage-WTI's incorrect reference to dicta from a concurring opinion by Justice Pfeifer on issues that were not even before the Court for consideration, when discussing the requirements pursuant to R.C. 4123.931(G).

**{¶34}** Appellant contends that the trial court erred by relying on Justice Pfeifer's analysis in his concurrence in *McKinley II*. Appellant argues that Justice Pfeifer's comments in his concurrence are *dicta* as they do not deal with the issue that was before the Ohio Supreme Court and therefore are not the law of the case. *See Gissiner v. Cincinnati*, 1st Dist. No. C-070536, 2008-Ohio-3161, ¶15.

**{¶35}** The relevant portion of Justice Pfeifer's concurrence is as follows:

A claim brought under R.C. 4123.931(G) is not a subrogation claim. It is a unique claim created by statute that punishes claimants and third parties for failing to include statutory subrogees in settlement negotiations. As "an action * * * upon a liability created by statute," an R.C. 4123.931(G) action has a six-year statute of limitations pursuant to R.C. 2305.07.

This appeal concerns only Heritage. Any battles between McKinley and the BWC over the distribution of the settlement amount subject to the BWC's rights under R.C. 4123.931(B) do not concern Heritage. Any claim that the BWC might have brought under R.C. 4123.931(H) was subject to the two-year statute of limitations. A claim brought under

R.C. 4123.931(G) against Heritage does have a six-year statute of limitations. Whether such a claim under R.C. 4123.931(G) has any basis in fact is up to the trial court. The BWC has not alleged that it did not receive notice of settlement negotiations. The BWC's only hope for recovery from Heritage would be a provision in the settlement agreement that specifically excludes payments made by the BWC. The trial court should proceed on the BWC's case against Heritage on that limited basis.

*McKinley II*, 130 Ohio St.3d 156, 2011-Ohio-4432, 956 N.E.2d 814, ¶47-48.

**{¶36}** Although Appellant is correct that Justice Pfeifer's comments are *dicta* in *McKinley II*, there is no reason to avoid considering them if they apply to the instant appeal. Just as in *McKinley II*, the instant appeal only involves BWC's claim against Heritage-WTI. Justice Pfeifer correctly stated that the distribution of settlement funds is a matter between the claimant and BWC as governed by the proportional formula in R.C. 4123.931(B). Justice Pfeifer correctly noted that the two issues in a R.C. 4123.931(G) claim are whether BWC had notice of the settlement talks and whether the settlement excluded any amounts paid by BWC. Justice Pfeifer was correct in stating that there is no question that BWC received notice of the settlement talks, and when he explained that the remaining controversy centers around whether the settlement excludes the amounts already paid by BWC. Justice Pfeifer's analysis is consistent with the actual wording of R.C. 4123.931(G) and with the facts of this case, and there was no reason for the trial court to avoid using his comments as

persuasive authority. Even absent Justice Pfeifer's discussion, we would reach the identical conclusion. If the legal analysis is correct, it does not matter where it originates as long as it does not conflict with applicable binding precedent. *Daniel E. Terreri & Sons, Inc. v. Mahoning Cty. Bd. of Commrs.*, 152 Ohio App.3d 95, 2003-Ohio-1227, 786 N.E.2d 921, ¶79 ("The fact that Ohio law is binding in this case does not prohibit a trial court or this court from considering, as persuasive authority, federal common law when Ohio case law is silent on the subject."). Therefore, we overrule Appellant's third assignment of error.

### Conclusion

**{¶37}** The trial court did not err in granting Appellee's motion for summary judgment. First, the documents provided by Appellee in support of its motion for summary judgment were correctly submitted and can be used in support of its motion. Second, the amount paid by BWC was not excluded from the settlement. The settlement amount is more than three times the amount owed to BWC, and BWC is able to collect its lien through the appropriate statutory mechanisms. Finally, the trial court did not err in relying on the analysis of Justice Pfeifer in his concurring opinion in *McKinley II* as persuasive authority in granting summary judgment to Appellee. For the reasons stated above, we overrule all three of Appellant's assignments of error and affirm the trial court's judgment in favor of Heritage-WTI.

Donofrio, J., concurs.

Vukovich, J., concurs.